IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GREGORY CUNNINGHAM,

                    Plaintiff,

vs.                                      Case No. 12-1234-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff

supplemental security income payments.  The matter has been

fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J.
Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 15, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 10-19). Plaintiff alleges that he has been disabled since August 31, 2007 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial

gainful activity since plaintiff's application date of October 29, 2008 (R. at 12). At step two, the ALJ found that plaintiff has the following severe impairments: plantar fasciitis; lower extremity neuropathy; bipolar disorder; mood disorder not otherwise specified; anxiety disorder not otherwise specified; generalized anxiety disorder; antisocial personality disorder; and personality disorder not otherwise specified with antisocial traits (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 18). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18-19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III. Did the ALJ err in the relative weight given to various medical opinions?**

On June 2, 2009, Dr. Stern prepared a state agency mental RFC assessment opining that plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Stern indicated that

plaintiff would be best suited to work that only requires that

he remember and carry out simple instructions, and that he not

require frequent interactions with the general public or

coworkers (R. at 311-313). On January 16, 2010, Dr. Schulman

affirmed this assessment (R. at 395).

A second state agency mental RFC assessment was prepared by

Dr. Shwetz on March 9, 2010. Dr. Shwetz found plaintiff not

only moderately limited in the above categories identified by

Dr. Stern, but also found her moderately limited in these

additional categories:

> The ability to maintain attention and
> concentration for extended periods.
>
> The ability to perform activities within a
> schedule, maintain regular attendance, and
> be punctual within customary tolerances.
>
> The ability to work in coordination with or
> proximity to others without being distracted
> by them.
>
> The ability to complete a normal workday and
> workweek without interruptions from
> psychologically based symptoms and to
> perform at a consistent pace without an
> unreasonable number and length of rest
> periods.
>
> The ability to accept instructions and
> respond appropriately to criticism from
> supervisors.
>
> The ability to maintain socially appropriate
> behavior and to adhere to basic standards of
> neatness and cleanliness.

> The ability to respond appropriately to
> changes in the work setting.
>
> The ability to set realistic goals or make
> plans independently of others.

(R. at 418-419).  Dr. Shwetz indicated that plaintiff would be best working at simple routine tasks in a structured quiet setting with clear work performance expectations and little distraction.  She further stated that plaintiff would have difficulty being reliably consistent in pace and persistence. Plaintiff would need to work with a patient and nonthreatening supervisor who can give timely and constructive feedback, and would need to work with minimal changes and decision-making (R. at 420).  Dr. Shwetz provided a very detailed explanation for making findings which were more restrictive than those of Dr. Stern (R. at 417).  These two opinions provide the only detailed assessments of plaintiff's mental limitations.

The ALJ found that the opinions of Dr. Stern/Dr. Schulman were "consistent with the overall record and are given some weight."  The ALJ found that the opinion of Dr. Shwetz is "not consistent with the overall record and is given little weight" (R. at 17).  In his RFC findings, the ALJ included the following mental limitations:

> He is limited to simple, routine, repetitive
> tasks, not performed in a fast-paced
> productions environment, involving only
> simple work-related decisions and in general
> few work place changes.  He is limited to

> occasional interaction with coworkers,
> supervisors, and the general public.

(R. at 14).  Thus, the ALJ's RFC findings incorporate all of the
limitations contained in the assessment by Dr. Stern, but only
incorporate a few of the additional limitations found by Dr.
Shwetz.

At the hearing, the vocational expert (VE) found that
plaintiff, given the ALJ's RFC findings, could perform other
work in the national economy (R. at 51-52).  However, the VE
further testified that a person with the limitations contained
in the assessment by Dr. Shwetz would preclude competitive
employment (R. at 52-54).

An ALJ must evaluate every medical opinion in the record.
Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The
ALJ "will" evaluate every medical opinion that they receive, and
will consider a number of factors in deciding the weight to give
to any medical opinion.  Hamlin, 365 F.3d at 1215; 20 C.F.R.
§§ 404.1527(c), 416.927(c).

As noted above, the ALJ found that the assessment by Dr.
Stern was consistent with the overall record, and was given some
weight, while the assessment by Dr. Shwetz was not consistent
with the overall record and was given little weight.  The court
finds that such a summary conclusion that the assessment was or
was not consistent with the overall record is beyond meaningful

judicial review.  In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence supports the ALJ's conclusion that an assessment was or was not consistent with the overall record. See Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). Boilerplate, conclusory statements must be linked to evidence in the record.  See Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  Conclusory statements do not provide justification for rejecting a medical source opinion; the Commissioner must give specific, legitimate reasons for rejecting the medical source opinion.  Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988).  Other than making conclusory statements, the ALJ provided no explanation for why one assessment was consistent with the evidence, while the other assessment was not consistent with the evidence.  Nothing in the ALJ's decision explains the basis for these conclusory statements by the ALJ.  Therefore, this case shall be remanded in order for the ALJ to explain why greater weight was given to the assessment by Dr. Stern, and little weight was given to the assessment by Dr. Shwetz.

As noted above, and by defendant in her brief (Doc. 19 at 17), it appears that the ALJ included a few, but not many of the additional limitations opined by Dr. Shwetz.  However, an ALJ should explain why he rejected some limitations contained in an assessment, but appeared to adopt other limitations contained in

the assessment.  Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir.

2007).  The ALJ offered no explanation for appearing to adopt

some of the limitations set out by Dr. Shwetz, but rejecting

others.  On remand, the ALJ must comply with this requirement.

**IV.  Did the ALJ err in his credibility analysis?**

Plaintiff also asserts error by the ALJ in his credibility

findings.  The court will not address this issue because it may

be affected by the ALJ's resolution of the case on remand after

providing a legally sufficient explanation for the weight

accorded to the medical source opinions, particularly those of

Dr. Stern and Dr. Shwetz.  See Robinson v. Barnhart, 366 F.3d

1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the

Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with

this memorandum and order.

Dated this 28th day of August 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge